Helen A. WILSON, as Representative Payee for Roland D. Wilson, Social Security # 004–54–7227, on behalf of herself and all others similarly situated, Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.

No. 81–1188.

United States Court of Appeals, First Circuit.

Argued Nov. 4, 1981.

Decided March 8, 1982.

James R. Crotteau, Machias, Me., with whom Hugh Calkins, Portland, Me., was on brief, for plaintiff, appellant.

Robert J. Triba, Asst. Regional Atty., Boston, Mass., with whom Richard S. Cohen, U. S. Atty., and William H. Browder, Jr., Asst. U. S. Atty., Portland, Me., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, DAVIS,* Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

Appellant, Helen Wilson, filed a district court action attacking the reduction of her social security benefits. She claimed that the regulation authorizing the reduction was outside the agency's statutory powers. The district court dismissed her action (and denied her request for class certification) because she had not properly exhausted her agency remedies (*i.e.*, there was no "final" agency decision to review) and because, in any event, the agency had decided not to reduce her benefits, making this action moot. We affirm the district court's decision.

I

Helen Wilson is a recipient of Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* Her son Roland also applied for SSI in November 1977. He was granted benefits and a "representative payee" was appointed for him in accordance with the statute, 42 U.S.C. § 1383(a)(2),[1]

---

\* Of the United States Court of Claims, sitting by designation.

1. "Payments of the benefit of any individual may be made to any such individual or to his eligible spouse (if any) or partly to each, or, if the Secretary deems it appropriate to any other person (including an appropriate public or private agency) who is interested in or concerned with the welfare of such individual (or spouse)...." This section continues to make the payment of benefits to a third person the required course where the recipient is a drug

and the appropriate regulation, 20 C.F.R. § 416.601(a). That regulation provides:

> When it appears to the Administration that the interests of a recipient of payments under Title XVI of the Act would be served thereby, certification of payment may be made by the Administration, ... to a relative or some other person (including an appropriate public or private agency) selected by the Administration as the 'representative payee' of the recipient.

In April 1978 Roland moved to live with his mother, Helen, and she was substituted as his representative payee. About a year later, Helen received a "Notice of Overpayment," indicating that she was to be held personally liable for an overpayment of $446.01 to Roland because she had failed to report his income from work the previous summer. The Bangor District Office, which sent this notice to Helen, evidently followed the provisions of the Claims Manual in determining liability:

> The representative payee is personally liable for repayment to the extent that (i) the incorrect payments were not used for the support and maintenance of the recipient or (ii) the representative payee is at fault in connection with the overpayment.

C.M. § 5595.2(d)(2)(B), based on 20 C.F.R. §§ 416.551–416.553. Helen Wilson was also informed in clear language on this same notice that she could either (1) request that the repayment be waived because she was not at fault and could not afford repayment or (2) request reconsideration of the decision.

On April 27, 1979, Helen wrote to the Social Security Administration requesting that the payments be waived. Sometime before May 7, she sought and received representation from the Pine Tree Legal Assistance Office in Maine.

Subsequently, on May 10, 1979, Helen received a "Notice of Action to Recover Overpayment" reducing the amount sought to $173.47.[2] The Notice reported that the Secretary had determined that Helen was at fault in connection with the overpayment and that therefore repayment could not be waived:

> We have found that you must be held liable for repayment of the $173.47. You completed a review form for Roland's SSI in 7/78. You did not report that he was working, even though he started work in 6/78. That part of the overpayment was caused by your failure to report that Roland was working and must be repaid.

Helen was also told that, beginning in June, $25 per month would be withheld from her own SSI payments until the total of $173.47 was recovered. In this same notice the agency asked her to contact the office if she disagreed with the rate of recovery. It added she could request reconsideration (the first step in the internal agency review) within 60 days and that if she wanted to have her payments continued pending appeal she must request reconsideration within 10 days.

About one month later, on June 12, Helen requested reconsideration. The agency granted her a "case review."[3] On June 18, 1979, the agency sent her a "Notice of Reconsideration" affirming the prior decision. Two days later, she requested a hearing before an Administrative Law Judge (ALJ), the next step in the internal agency review.

addict or alcoholic not undergoing treatment at an approved facility.

**2.** The notice explained that the previously claimed amount of overpayment had been revised and reduced. "The above figure of $173.47 represents that part of the SSI that was not due because of Roland's wages. We as yet are unable to determine who negotiated the back social security payment that could have caused a $446.01 overpayment. We will contact you at a future date on that matter."

**3.** Three types of review are available: formal conference, informal conference, or case review. These three systems were clearly explained in detail on the Notice of Overpayment and the Notice of Action to Recover Overpayment. The former Notice (but not the latter) instructed the claimant to specify the type of review desired; Helen did not specify which type of review she wanted.

Helen's hearing before the ALJ took place on October 16, 1979. Her counsel, for the first time, began to make various due process and statutory claims, attacking the adequacy of the notice and hearing in the procedure for recoupment and also claiming that the statute did not permit recovery of overpayments from a representative payee at all. The ALJ was obviously somewhat surprised by these arguments as up to now all of the District Office decisions had merely considered whether Helen was or was not at fault for the overpayment. He therefore remanded the case to the District Office (Bangor) for consideration of the new questions presented by Helen's counsel.

On February 14, 1980, apparently before the District Office took any further action, Helen's counsel filed a complaint in the district court, raising three claims: (1) that appellant's constitutional due process rights had been violated because of inadequate notice of, and opportunity for, a recoupment hearing, (2) that the appellant's rights under the Social Security Act, 42 U.S.C. § 1383(b) had been violated by the same failure, and (3) that recovery of any overpayment under 42 U.S.C. § 1383(b) may only be had from a recipient, his or her eligible spouse, or the estate of either, *not* from a representative payee—even if the representative payee is at fault.[4] On April 2, 1980, appellant moved for certification of a class of "all recipients of benefits under Title XVI of the Social Security Act who reside within the District of Maine; who have been, or will be, charged with an over-

payment of such benefits; who have requested or will request waiver or reconsideration of such overpayment; who have not been, or will not be, provided with adequate notice of their rights or adequate opportunity for a hearing before recoupment of such overpayment." This class was for the purposes of the appellant's first two claims only. On April 30 the appellee objected to the motion for class certification and on May 14, 1980, moved to dismiss the complaint for lack of subject matter jurisdiction. On December 18, 1980, the appellant moved for certification of a different class of representative payees: "All representative payees for recipients of benefits under Title XVI of the Social Security Act who reside within the District of Maine; who have been or will be charged with an overpayment on the recipient's account; who have not been or will not be determined to have used the payment for purposes other than the recipient's needs; who have been or will be threatened with recovery of the overpayment; and who have requested or will request that the overpayment not be recovered from them." This class was for the purposes of the third claim only.

In the meantime, on the administrative side of the proceedings, the District Office in Bangor had an oral conference with appellant's counsel sometime in April, focusing on the new claims. No oral decision was rendered at that time, but in December Helen Wilson received a call from the Auburn District Office, in which she was told that her liability had been cancelled,[5] and

---

4. 42 U.S.C. § 1383(b):

(b) Whenever the Secretary finds that more or less than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall, subject to the succeedings provisions of this subsection, be made by appropriate adjustments in future payments to such individual or by recovery from or payment to such individual or his eligible spouse (or by recovery from the estate of either). The Secretary shall make such provision as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual or his eligible spouse who was without fault in connection with the

overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity or good conscience, or (because of the small amount involved) impede efficient or effective administration of this subchapter.

Appellant notes that this section does not refer to "representative payees" as such.

5. The Secretary's precise reasons for cancelling the liability and the role of the Auburn District Office are unclear. According to the appellant's counsel, the District Office in Auburn reported that it had reviewed Roland's account and had determined that he had been underpaid in a subsequent quarter. There is no documentation of this decision.

she would receive a refund of the money already withheld.

Thus, by the time of the hearing on the motion to dismiss and the motions for class certification before Judge Gignoux on January 15, 1981, appellant had received a full refund of her SSI payments. The district court granted the Secretary's motion to dismiss on the grounds that there had been no exhaustion of remedies and hence there was no jurisdiction under either the Social Security Act, 42 U.S.C. § 405(g), or the federal mandamus provisions, 28 U.S.C. § 1361. The district court also noted that the appellant's claim was moot, and that as her claim was moot her motion for class certification must also be denied on the grounds that she no longer represented the class in question.

The appellant raises on appeal only one of the three claims for relief presented below: that under the terms of the statute the Secretary may not attempt to recover overpayments from representative payees. With regard to this claim only she argues that (1) jurisdiction is proper under § 405(g), (2) that mandamus jurisdiction is appropriate under § 1361, and (3) that the matter is not moot.

## II

■ The federal district court's jurisdiction over appellant's statutory claim is governed by 42 U.S.C. § 405(g), which states that an "individual, after any final decision of the Secretary made after a hearing, . . . may obtain review of such decision" in a federal court. This specific statutory grant of jurisdiction is the only avenue that Congress has provided for review of a decision denying social security benefits. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). And, the "final decision" required to invoke this jurisdiction has been authoritatively interpreted to mean "that the administrative remedies provided by the Secretary be exhausted." *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). It is undisputed that the appellant had not exhausted her administrative remedies before filing this suit. As to the statutory issue,

she had a right to a hearing before an administrative law judge. 20 C.F.R. §§ 404.929, 404.930. And, as to all issues raised, she had a right to review of the ALJ's decision by the Social Security Administration Appeals Council. 20 C.F.R. §§ 404.967, 404.970. The Council had adequate power to review and interpret the regulations and statute, and had it accepted her statutory argument, could have granted her relief notwithstanding the regulation. *See, e.g., Jones v. Califano*, 576 F.2d 12 (2d Cir. 1978).

Appellant argues, however, that the district court ought to have found that the exhaustion requirement was "waived." Indeed, the Supreme Court in *Mathews* held that this requirement is "waivable" by the Secretary and occasionally a court itself might find a waiver over the Secretary's opposition "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Mathews v. Eldridge*, 424 U.S. at 330, 96 S.Ct. at 900. There is no basis here, however, for finding any waiver, whether express or implied.

■ Appellant claims that the Secretary waived the exhaustion requirement by arguing the merits of her statutory claim before the district court. This argument is frivolous, however, for the Secretary's counsel was simply arguing in the alternative and specifically stated that the Secretary was not waiving the exhaustion requirement.

Appellant more seriously claims that the court ought to have imposed a "waiver." In considering this argument we first note that the "exhaustion" doctrine, found generally in administrative law, serves several important interests, set forth by the Supreme Court in *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), and reiterated by this circuit in *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774 (1st Cir. 1981):

It allows the agency to develop a factual record, to apply its expertise to a problem, to exercise its discretion, and to correct its own mistakes, all before a court will intervene. Insofar as specialized ad-

ministrative understanding is important, the doctrine thereby promotes accurate results, not only at the agency level, but also by allowing more informed judicial review. By limiting judicial interruption of agency proceedings, the doctrine can encourage expeditious decision making. Insofar as Congress has provided that an agency will decide a matter in the first instance, to apply the doctrine normally furthers specific Congressional intent. And, as a general matter, the doctrine promotes a sensible division of tasks between the agency and the court: litigants are discouraged from weakening the position of the agency by flouting its processes, while court resources are reserved for dealing primarily with those matters which could not be resolved administratively. Thus, the doctrine serves the interests of accuracy, efficiency, agency autonomy and judicial economy. *See generally* 3 K. Davis, Administrative Law Treatise, § 20.01 *et seq.* (1958 & Supp. 1965 & Administrative Law of the Seventies); L. Jaffe, Judicial Control of Administrative Action 424–458 (1965); Fuchs, *Prerequisites to Judicial Review of Administrative Agency Action*, 51 Ind. L.J. 819, 859–69 (1976).

Most, if not all, of these interests would be served by insistence upon exhaustion here. Appellant's statutory argument, if accepted by the Appeals Council or the Secretary, might have led to a narrowing interpretation of the regulations or their revision— matters directly within the discretion of the agency, not the court. The question of the statutory legality of the regulation or the Manual provision as written, while a question of law, is also a question upon which the considered views of the agency, as set out in the record of an individual case, are likely to be relevant and helpful to a court. *Cf. Skidmore v. Swift*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *Social Security Board v. Nierotko*, 327 U.S. 358, 368–69, 66 S.Ct. 637, 642–643, 90 L.Ed 718 (1946). Moreover, we are unlikely ever to find a case in which it is more obvious that delay of court proceedings would give the agency a chance to rectify a litigant's problems and save judicial time and effort, for that is precisely what did occur here: the SSA decided that Helen Wilson's claim to benefits was valid.

Appellant's case does not fit within any court-created exception to the exhaustion requirement of which we are aware. This is not a case where an agency refused to dismiss a proceeding, or acted in some other way, "that is plainly beyond its jurisdiction as a matter of law," *PepsiCo, Inc. v. FTC*, 472 F.2d 179 (2d Cir. 1972), *cert. denied*, 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973), or where the agency has otherwise plainly exceeded its statutory or constitutional authority. *See Skinner & Eddy Corp. v. United States*, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919); *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). The statute at issue, 42 U.S.C. § 1383(a)(2), recognizes the appropriateness of making payments to third parties.[6] The statute also gives the Secretary broad authority to promulgate regulations carrying out its purposes. 42 U.S.C. § 405(a). The Secretary has consistently interpreted language such as that in § 1383(b) to include representative payees in light of the authority to pay representative payees contained in § 1383(a). 20 C.F.R. §§ 416.551–416.553. The only case cited as "clear judicial precedent" for appellant's position, *Smith v. Califano*, 597 F.2d 152 (9th Cir.), *cert. denied sub nom. Smith v. Harris*, 444 U.S. 980, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979), is not on point for it did not consider overpayments. Thus, while we do not decide the merits of appellant's statutory argument, we do decide that appellant is far from being *plainly right*.

Nor is this a case in which the Secretary has taken a final position on the merits of appellant's argument. In *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333 (3d Cir. 1977), and *Jones v. Califano, supra*, both cited by appellant, courts held that in particular circumstances not *every* plaintiff in a complex class action need have ex-

---

**6.** *See* note 1, *supra*.

hausted administrative remedies. The named plaintiffs in those actions, however, had exhausted their remedies. Here, no one has done so. Moreover, here the Secretary has not reached a final decision on the statutory issue, for, as previously pointed out, he has adequate power to revise his interpretation of the statute or regulation, regardless of his current position as stated in the Claims Manual, see *Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981), if, for example, the Appeals Council should so recommend.

Finally, unlike *Mathews v. Eldridge, supra*, itself, where the Supreme Court found waiver, this case neither involves a "constitutional challenge entirely collateral to . . . [a] substantive claim of entitlement," *id.* 424 U.S. at 330, 96 S.Ct. at 900, nor some special "damage" caused by failure to give a predetermination hearing "not recompensable through retroactive payments." *Id.* at 331, 96 S.Ct. at 900. Indeed, the Secretary offered appellant (who was at the time represented by counsel) the opportunity to ask for a continuance of full benefits pending a hearing. She did not do so.

██ For these reasons, we believe the district court rightly found that appellant could not assert a claim for review under 42 U.S.C. § 405(g). Although appellant argues that she properly sought review on an alternative statutory basis, mandamus under 28 U.S.C. § 1361, it is apparent to us that this "extraordinary" statutory remedy, *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976), is inappropriate, both because appellant has failed to meet the showing of exceptional circumstances required by such cases as *Kerr v. United States District Court, supra; Will v. United States*, 389

U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *USM Corp. v. GKN Fasteners, Ltd.*, 574 F.2d 17 (1st Cir. 1978), and because an alternative remedy—through administrative proceedings and § 405(g) review—was available. *See Cervoni v. Secretary of Health, Education and Welfare*, 581 F.2d 1010, 1019 (1st Cir. 1978); *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972).[7] Thus, the district court's determination that appellant did not have a proper case before it, its refusal to certify a class, and its dismissal of the action were correct.

### III

██ The district court rested its dismissal on the alternative ground of "mootness." [8] It is plain that Helen Wilson no longer has a personal stake in the case, for her benefits have been restored. And, ordinarily the mootness of the substantive claim of the named plaintiff in a purported but uncertified class action moots the entire case. *Bailey v. Patterson*, 369 U.S. 31, 32–33, 82 S.Ct. 549, 550, 7 L.Ed.2d 512 (1962); *Arnold v. Panora*, 593 F.2d 161, 164 (1st Cir. 1979). Some courts have recognized a limited exception to this general rule if the defendant has deliberately and artificially created mootness by satisfying the named plaintiff's claim, effectively avoiding judicial resolution of a matter by "picking off" the named plaintiffs. *Susman v. Lincoln American Corp.*, 587 F.2d 866 (7th Cir. 1978), *cert. denied*, 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981). While there has been no showing in this case that the Secretary was deliberately "picking off" the named plain-

---

7. In so saying, we do not decide whether mandamus jurisdiction is or is not precluded by 42 U.S.C. § 405(h), a question left open by the Supreme Court's decision in *Califano v. Yamasaki*, 442 U.S. 682, 700, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979), and this court's decision in *Caswell v. Califano*, 583 F.2d 9, 13 n.8 (1978). We merely hold that were mandamus available in this class of cases generally, it most certainly would not be available in this case in particular.

8. Although the appellant claims that in dismissing this case on grounds of mootness the court made an improper incursion into the merits of the case, mootness itself is a jurisdictional matter, *North Carolina v. Rice*, 404 U.S. 244, 245, 92 S.Ct. 402, 403, 30 L.Ed.2d 413 (1971), and we see nothing improper about its use as an alternative ground for dismissal.

tiff, we need not explore the matter in depth for the district court's judgment is adequately supported on the grounds discussed in Part II of this opinion.

*The district court's judgment is therefore affirmed.*