**Leo REED, Fidel Cisneros, Nina Nicol, Abraham Manzanares, and Margaret Gardner by and through Kevin Burns as her next friend, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,**

v.

**Margaret M. HECKLER, Secretary of the Department of Health and Human Services, and Martha McSteen, Acting Commissioner of the Social Security Administration, in their official capacities, Defendants-Appellees.**

No. 83–2193.

United States Court of Appeals, Tenth Circuit.

March 6, 1985.

Daniel M. Taubman, Denver, Colo., of Colo. Coalition of Legal Services Programs (Michael J. Steiner, Denver, Colo., of Legal Aid Society of Metropolitan Denver, Inc., and Aileen M. Hooks, of Colo. Lawyer's Committee, with him on brief), Denver, Colo., for plaintiffs-appellants.

John Barksdale, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., with him on brief), Denver, Colo., for defendants-appellees.

Before HOLLOWAY, Chief Judge, and SETH and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Five recipients of social security benefits appeal from the district court's dismissal of their proposed class action for lack of subject matter jurisdiction. They sought to challenge the efforts of the Social Security Administration (SSA) to collect alleged overpayments of Supplemental Security Income (SSI) benefits by withholding current Old Age, Survivors and Disability Insurance (OASDI) benefits.[1] The district court

---

1. The SSI program, 42 U.S.C. § 1381 *et seq.* (1982), is a federally funded public assistance

ruled that the named plaintiffs had not exhausted their administrative remedies and therefore could not obtain judicial review of their claims. The court also denied certification of the class. We reverse.

## I.

### BACKGROUND

Before becoming eligible for OASDI benefits, each named plaintiff below received SSI benefits. Leo Reed is a sixty-five year old veteran who currently receives $189.00 per month in OASDI benefits and a $254.83 per month veterans pension. In 1982 he received an SSI Notice of Overpayment Action for an outstanding balance of $69.18 resulting from alleged overpayments between July and September 1976. After his initial appeal and request for a waiver were denied, he was told he could repay the entire overpayment at once, pay monthly installments, or have the overpayment deducted from his OASDI benefits.[2]

Fidel Cisneros is a sixty-three year old veteran who receives $223.33 per month in OASDI benefits and $220.00 monthly in veterans benefits. He received an SSI notice of overpayment which stated that he owed the SSA $10,645.78 and asked him to refund it immediately. The form did not advise him when this overpayment occurred or provide a monthly breakdown of the alleged overpayments, but did contain a tear sheet that Mr. Cisneros was intended to return. The tear sheet stated: "For my convenience, please withhold my full social security benefit each month until my supplemental security income (SSI) overpay-

ment of $_____ is fully recovered." Rec., vol. I, at 34. The SSA Debt Collection Center subsequently concluded that Mr. Cisneros could repay the alleged overpayment at the rate of $100.00 per month, more than 20 percent of his monthly income. Mr. Cisneros appealed.

Nina Nicol is a sixty-four year old widow whose income consists of $318 per month OASDI widow's benefits, and approximately $34 per month Colorado Old Age Pension benefits. In 1982 she received a similar notice of overpayment for the amount of $1,569.57, a debt apparently incurred during an overlap in her benefit payments between June 1974 and June 1975. An employee at the SSA Debt Collection Center examined Mrs. Nicol's living expenses, determined that she could afford to pay $44.00 per month, and rejected her offer to repay the debt at a rate of $10.00 per month. When Mrs. Nicol refused to enter into the proposed repayment agreement, she was informed that her account would be referred to the General Accounting Office for possible filing of a civil action against her unless she paid the full balance by November 30, 1982. This action was apparently not taken, but the Debt Collection Center continued to contact Mrs. Nicol and seek repayment.

Abraham Manzanares is a fifty-seven year old man whose income consists of $293.00 per month in OASDI benefits and about $327.00 per month in part-time employment. He was advised of an overpayment of $83.80, which he agreed to repay at the rate of $10.00 per month. He com-

---

program providing minimum subsistence benefits for needy aged, blind, and disabled persons. It is administered by the SSA of the Department of Health and Human Services. OASDI, also commonly known as social security, 42 U.S.C. § 401 *et seq.*, is a quasi-insurance program that pays benefits to insured workers and their spouses and children when workers are no longer able to work because of age, disability, or death. Individuals are eligible to receive OASDI benefits only if they (or their spouses or parents) have contributed to the social security fund during their working careers. The program is also administered by the SSA, but is totally separate from SSI, and operates pursuant

to different statutory authority and with separate funding.

**2.** The Secretary seeks to justify both the notice and the entire program by arguing that reduction of benefits is voluntary. The notice states: "If you cannot repay the entire overpayment today, you may arrange to pay by monthly installments or *you may choose* to have the overpayment deducted from your Social Security benefits." Brief of Appellees at 5 (emphasis added by Appellees). We understand the notice to offer only a choice in the method of payment. Since payment is obligatory, the choice is illusory for most recipients.

plains that he was coerced into this agreement and was discouraged from appealing. He then received another notice that an additional overpayment of $264.44 had been waived. Confused, he attempted to rescind his repayment agreement, but subsequently learned that the second overpayment was unrelated to the first. Despite his attempt to rescind the first agreement, he received notice that his OASDI check would be reduced by $10.00 per month.

The final named plaintiff, Margaret Gardner, is a thirty-seven year old woman who lives in a nursing home. Because of her mental illness, she receives $298.00 per month in OASDI benefits, which is paid directly to the nursing home since the SSA has determined she is incapable of managing her own money. In 1982 she was notified that she had been overpaid $5,784.85, which she later learned had occurred between January 1974 and September 1975. Ms. Gardner was then induced to sign an "agreement" which would require her to make monthly payments of $100.00 on the alleged overpayment. This is more than one-third of her monthly income. A month later, she arranged to have the monthly payment reduced to $50.00. Finally, however, she decided to rescind the agreement. She filed an appeal of the overpayment determination and alternatively sought a waiver. At that time, the SSA waived only $1,941.68 of the total, leaving a balance of $3,843.17.

Plaintiffs' suit in the district court challenged on statutory and constitutional grounds the Cross Program Recovery plan that permits recovery of SSI overpayments by the reduction of OASDI benefits; the sufficiency of notice concerning both the substance of the claims and the plaintiffs' procedural rights; the rulemaking procedure of the SSA; the attempt to recover overpayments from those who subsequently had been found no longer disabled; and the efforts of the SSA to recover amounts so small that the cost of recovery exceeded the alleged overpayment. The named plaintiffs also sought class certification.

The district court never reached the merits, holding instead that it had no subject matter jurisdiction because plaintiffs had failed to exhaust their administrative remedies.[3] Specifically, the court found that plaintiffs did not fit within the exception for exhaustion outlined in *Mathews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976). The court also denied class certification. After suit was filed but before the district court issued its opinion, the SSA determined that Fidel Cisneros was not at fault in his overpayment and agreed to waive the entire sum of $10,645.78. Following the district court's decision, the SSA ruled that some of the remaining named plaintiffs had received no overpayments and waived repayment for the others.

On appeal, the issues of jurisdiction and class certification are complicated by the subsequent overpayment waivers granted by the SSA. The Secretary contends that, even assuming there is subject matter jurisdiction, the merits of the case are moot as a result of the waivers. We turn first to the issue of subject matter jurisdiction, and then we address the class certification and mootness contentions.

## II.

### SUBJECT MATTER JURISDICTION

In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court held that section 205(h) of the Social Security Act, 42 U.S.C. § 405(h) (1982), bars general federal question jurisdiction in actions challenging denial of claimed benefits. Section 205(g) of the Act, 42 U.S.C. § 405(g), thus provides the only means of judicial review and requires a final decision by the Secretary as a jurisdictional prerequisite. *See also Mathews*, 424 U.S. at 327, 96 S.Ct. at 899. In *Mathews*, the Court recognized an excep-

---

3. The court also held that plaintiffs could not invoke mandamus jurisdiction under 28 U.S.C. § 1361 (1982). Since we find jurisdiction under the Social Security Act, 42 U.S.C. § 405(g), we do not reach the issue of mandamus jurisdiction.

tion to the exhaustion requirement in those cases where actions of the Secretary are challenged on constitutional grounds and the constitutional claim is collateral to the substantive claim of entitlement. *Id.* at 330, 96 S.Ct. at 900. The Court identified two elements of the exhaustion requirement, one purely jurisdictional and the other waivable by the Secretary. The nonwaivable jurisdictional element requires a claimant to present the claim to the Secretary, so that some decision may be had. The waivable element requires a claimant to exhaust the administrative remedies prescribed by the Secretary. *Id.* at 328, 96 S.Ct. at 899. Although the discretion to waive the exhaustion requirement ordinarily rests with the Secretary,[4] *Mathews* held that a court may infer waiver "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.* at 330, 96 S.Ct. at 900; *see Heckler v. Ringer,* — U.S. —, 104 S.Ct. 2013, 2023, 80 L.Ed.2d 622 (1984). In other words, waiver may be inferred where "there is a showing of irreparable injury not recompensable through retroactive payments." *Bartlett v. Schweiker,* 719 F.2d 1059, 1061 (10th Cir.1983).

■■■ In this case, the district court recognized that each of the named plaintiffs had satisfied the nonwaivable element of the exhaustion requirement, with the possible exception of Fidel Cisneros.[5] The court also noted that the Secretary had not chosen to waive the requirement that plaintiffs complete the administrative process. It then considered whether waiver should be inferred. In this connection, the court first held plaintiffs' constitutional claims to be clearly collateral to the question of whether any overpayment actually occurred.

Yet the court found no waiver, and therefore no subject matter jurisdiction, because plaintiffs "failed to show that their interest in having their statutory and constitutional claims resolved promptly 'is so great that deference to the agency's judgment is inappropriate.'" Rec., vol. I, at 276 (quoting *Mathews,* 424 U.S. at 330, 96 S.Ct. at 900).

We disagree. Each plaintiff alleged acute mental and physical distress in the face of the proposed reductions of their benefits. All but one of plaintiffs are elderly and all but one alleged that if their OASDI checks were reduced they would be unable to meet the minimal costs of subsistence. The specter of thousands of dollars of debt under these circumstances, with inadequate notice as to procedural rights or the source of the debt, can cause irreparable harm while awaiting administrative review. *Cf. Mathews,* 424 U.S. at 331 n. 11, 96 S.Ct. at 901 n. 11. Plaintiffs in this case allegedly were afraid they would not be able to survive economically. Margaret Gardner alleges that she became severely depressed and even contemplated suicide. This kind of emotional harm, faced by numerous OASDI recipients who have been threatened with substantial cuts, constitutes the type of situation where deference to the agency's judgment is inappropriate. Since the allegations of the complaint are uncontroverted and must be construed favorably to plaintiffs, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), we must accept them as true. *See Eaton v. Dorchester Development, Inc.,* 692 F.2d 727, 731 (11th Cir.1982); *Ardalan v. United States,* 534 F.Supp. 721, 723 (D.Colo.1982); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1350, at 551–52 (1969 & Supp.1983). We believe plaintiffs have raised at least a

---

**4.** The Secretary may waive exhaustion when it appears that no further administrative review is warranted, either because the internal needs of the agency have been satisfied or because the relief sought is beyond the Secretary's power to confer. *Bartlett v. Schweiker,* 719 F.2d 1059, 1061 (10th Cir.1983).

**5.** Mr. Cisneros' alleged overpayment had already been waived by the Secretary and defend-

ants contended that his claim was moot. In light of our conclusion concerning mootness, infra, and our remand for reconsideration of class certification, we find this fact insignificant. We note, however, that all members of a proposed class action under § 405(g) must satisfy this exhaustion requirement. *See Califano v. Yamasaki,* 442 U.S. 682, 703–04, 99 S.Ct. 2545, 2558–59, 61 L.Ed.2d 176 (1979).

colorable claim of sufficient harm to support a finding of jurisdiction in this case. *See Mathews,* 424 U.S. at 331, 96 S.Ct. at 900.

The Secretary argues that, nonetheless, plaintiffs' claims are not collateral to their claims for unreduced and uninterrupted benefits. In *Ringer,* ── U.S. ──, 104 S.Ct. 2013, 80 L.Ed.2d 622, the Supreme Court considered whether four Medicare claimants seeking reimbursement for a certain surgical procedure had asserted truly collateral constitutional claims. Although those plaintiffs raised procedural objections to the manner in which the Secretary reached her decision not to reimburse, the Court determined that these claims were nothing more than, "at bottom, a claim that they should be paid for their ... surgery." [6] *Id.,* 104 S.Ct. at 2021. The claims were thus held "inextricably intertwined" with the plaintiffs' claims for benefits. *Id.*

Here, plaintiffs raise significant due process issues which are sufficiently distinct from their challenges to recoupment of overpayments to distinguish this case from *Ringer.* Foremost is their challenge to the Secretary's power to implement a Cross Program Recovery plan which has not been authorized by Congress. This circuit recently recognized a similar challenge as collateral to the substantive claim of entitlement in *Bartlett,* 719 F.2d at 1061. The plaintiffs there claimed that the local agency had no authority to terminate their benefits.

A second cluster of claims challenges the sufficiency of notice concerning both the source of the alleged overpayments and plaintiffs' procedural rights. These claims, we believe, closely parallel the claim for a pretermination hearing recognized in *Mathews* as collateral. 424 U.S. at 330, 96 S.Ct. at 900. The Court held that "denying Eldridge's substantive claim 'for other reasons' or upholding it 'under other provisions' at the post-termination stage would not answer his constitutional challenge."

*Id.* at 331–32, 96 S.Ct. at 901 (citations omitted). Similarly, waivers granted "for other reasons" in this case would not answer the constitutional challenges raised by these plaintiffs. Instead, the challenges would be lost and possibly never addressed. *See McGrath v. Weinberger,* 541 F.2d 249, 253 (10th Cir.1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1557, 51 L.Ed.2d 778 (1977); *cf. Heckler v. Lopez,* ── U.S. ──, 104 S.Ct. 221, 224, 78 L.Ed.2d 217 (1983) (Stevens, J., dissenting in part from memorandum decision denying application to vacate stay). Although the Secretary has the power to revise her policy, a fact indicating that commitment to the administrative process would be appropriate, *see Wilson v. Secretary of Health & Human Services,* 671 F.2d 673, 679 (1st Cir.1982), *Mathews* found this not to be a controlling factor. "It is unrealistic to expect that the Secretary would consider substantial changes ... at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context." *Mathews,* 424 U.S. at 330, 96 S.Ct. at 900.

Plaintiffs assert statutory as well as constitutional claims. Many courts have extended the exhaustion exception to include statutory claims. *See, e.g., Lopez v. Heckler,* 725 F.2d 1489, 1503 (9th Cir.), *vacated on other grounds,* ── U.S. ──, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984); *Kuehner v. Schweiker,* 717 F.2d 813, 817–18 (3d Cir. 1983), *vacated on other grounds,* ── U.S. ──, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984); *Wright v. Califano,* 587 F.2d 345, 349 (7th Cir.1978); *Caswell v. Califano,* 583 F.2d 9, 14 (1st Cir.1978); *Jones v. Califano,* 576 F.2d 12, 20–21 (2d Cir.1978); *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333, 346 (3d Cir.1977); *Fitzgerald v. Schweiker,* 538 F.Supp. 992, 997–98 (D.Md. 1982). This circuit has never considered the issue. Although we believe that constitutional issues present a more compelling case for judicial intervention, *see Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980,

---

**6.** We find this distinction unhelpful, since almost any claim could be reduced, at bottom, to a substantive claim of entitlement. We note

that plaintiffs would have had no standing under § 405(g) were they not challenging that determination.

986, 51 L.Ed.2d 192 (1977), we agree that certain statutory claims, including those presented here, should fall within the exception.

The Third Circuit became the first court to extend the exception to statutory claims in *Liberty Alliance of the Blind*. There the court held that when the agency does have authority to decide a statutory legal issue, the test for exhaustion should be whether the Secretary has taken a final position on the issue. 568 F.2d at 346. Here plaintiffs allege that the SSA has undertaken to recover alleged SSI overpayments from an entire class of recipients. This is supported by an SSA memorandum dated February 16, 1982 which states that "there is a large class of backlogged, or aged, SSI overpayment cases with a high potential for collection," rec., vol. I, at 216, and identifies current recipients of benefits as targets.[7]

We find support for this conclusion from the Second Circuit in *Jones*, 576 F.2d at 20–21. That court recognized that when the issue is one of statutory construction, "[t]o require each claimant to pursue his individual administrative remedy [vindicates] no legitimate agency interest." *Id.* Therefore, deference is inappropriate when a statutory interpretation can be universally applied to all eligible claimants. *Id.* at 21. Moreover, as indicated by the facts in this case, those who challenge the determination are frequently granted waivers or else are administratively held not to have made an overpayment. Those who fail to appeal, however, whether through ignorance or resignation, face reduction of their benefits, an unfair result given the acknowledged age and unreliability of some of the alleged overpayments. *See* rec., vol. I, at 217; *cf. Jones*, 576 F.2d at 18. A judicial determination of the statutory claim would prevent this inconsistency.

In sum, we hold that the district court has subject matter jurisdiction over both the constitutional and statutory claims raised in this action.

## III.

### MOOTNESS AND CLASS CERTIFICATION

The Secretary contends that even if the district court has jurisdiction, the satisfaction of plaintiffs' individual administrative appeals renders this case moot on the merits of plaintiffs' claims. As a general rule, a suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified. *See Bailey v. Patterson*, 369 U.S. 31, 32–33, 82 S.Ct. 549, 550, 7 L.Ed.2d 512 (1962); *Wilson*, 671 F.2d at 679; *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1045 (5th Cir.1981); *cf. Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Clearly, however, this case would not be moot if the district court had certified the proposed class of OASDI recipients. Although the court gave no reason for the denial of class certification, we presume that it did so because of the conclusion that it lacked subject matter jurisdiction.[8] Since we are reversing that decision, it would seem harsh to rule that plaintiffs may not challenge the class certification decision because their claims are moot. The issue, then, is whether resolution of the named plaintiffs' individual claims moots a proposed class action on appeal when the district court denied certification of the class for an inappropriate reason.

The Supreme Court faced a similar question in *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Geraghty was a federal prisoner who brought a proposed class action challenging parole guidelines.

---

**7.** Although the memo targets recipients of "SSI or RSDI benefits," we believe that the obvious implication, as shown by the facts in this case, is that other program beneficiaries are also subject to this practice.

**8.** The Secretary apparently agrees with this inference because she argues in her brief that the jurisdictional issue was a threshold question obviating the need for the court to make detailed findings on the class issue. Brief of the Defendants-Appellees at 33.

The district court denied certification and granted summary judgment for the defendants. While the appeal was pending, Geraghty was mandatorily released and the defendants sought to dismiss the appeal as moot. The Third Circuit ruled that the case was not moot since class certification had been denied erroneously. *See Geraghty v. United States Parole Commission*, 579 F.2d 238 (3d Cir.1978). In other words, certification of a "certifiable" class following an erroneous denial relates back to the original denial and preserves jurisdiction. *Id.* at 248–52; *see Geraghty*, 445 U.S. at 394, 100 S.Ct. at 1207. The Supreme Court affirmed, stressing the flexible character of the Article III mootness doctrine, *id.* at 402–04, 100 S.Ct. at 1211–12, and the fact that the dispute still existed in a form capable of judicial resolution, that is, in a truly adversarial relationship. *Id.* at 403, 100 S.Ct. at 1212; *see Zeidman*, 651 F.2d at 1047–48; *cf. Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983). The Court analogized Geraghty's situation to cases which are "capable of repetition, yet evading review," *e.g., Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); *Roe v. Wade*, 410 U.S. 113, 123–24, 93 S.Ct. 705, 711–12, 35 L.Ed.2d 147 (1973), even though Geraghty faced no "likelihood" of becoming involved in the same controversy in the future. *Geraghty*, 445 U.S. at 398 & n. 6, 100 S.Ct. at 1209 & n. 6. The Court concluded that an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied. *Id.* at 404, 100 S.Ct. at 1212.

Certain factors, however, distinguish *Geraghty* from our case and require scrutiny to determine whether it controls our situation. In *Geraghty*, motions for intervention and substitution indicated that the controversy was still a live one for at least some members of the class Geraghty proposed to represent. *Geraghty*, 445 U.S. at 396, 100 S.Ct. at 1208. We have no such motions before us, but the SSA memorandum discussed above indicates a continuing policy of cross program recovery of overpayments. The Secretary has not contended that the policy has changed.[9]

In addition, the claim in *Geraghty* was inherently transitory in nature and expired with the mere passage of time, an important factor in those cases where the Court has applied the relation back doctrine. *See Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Here, the plaintiffs' claims are not inherently transitory; rather, they have received favorable judgments from the agency that they sued. The *Geraghty* Court specifically left open the question whether *settlement* of the named plaintiff's personal claim would render the case moot. *See Geraghty*, 445 U.S. at 404 n. 10, 100 S.Ct. at 1212 n. 10. We are persuaded by the thorough opinion in *Zeidman*, 651 F.2d 1030, however, that we should extend *Geraghty* to class claims that have been rendered moot by purposeful action of the defendants. *See id.* at 1049–50. The *Zeidman* court held that a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims when a diligently pursued motion for class certification is pending before the district

---

**9.** Moreover, the *Geraghty* Court recognized that "the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case." *Id.* at 399, 100 S.Ct. at 1210 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975)). Here, we have indigent plaintiffs represented by a legal services agency challenging a continuing policy of the SSA. We assume there are other legal services clients with a continuing live interest in the case who can represent the class if necessary for certification. As the Court further explained, this type of class action is "more analogous to the private attorney general concept than to the type of interest traditionally thought to satisfy the 'personal stake' requirement." *Id.*, 445 U.S. at 403, 100 S.Ct. at 1212.

court.[10] *Id.* at 1051. *Accord Susman v. Lincoln American Corp.*, 587 F.2d 866 (7th Cir.1978), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980). So long as the claims of the unnamed plaintiffs are presented in a sufficiently adversarial relationship to sharpen the issues, the ability of the defendant to moot the claims of the named plaintiffs by favorable judgments should not prevent reexamination of the class certification issue. *Cf. Zeidman,* 651 F.2d at 1048.

As did the *Zeidman* court, we find additional support for this conclusion in cases where courts have held that a defendant governmental agency's voluntary performance of a specific action demanded in the lawsuit could not prevent a decision on the plaintiff's motion for certification by rendering the named plaintiff's claim moot. *See id.* at 1051 (citing *DeBrown v. Trainor,* 598 F.2d 1069, 1072 (7th Cir.1979) (eligibility for food stamps restored by defendant state welfare agency); *White v. Mathews,* 559 F.2d 852, 857 (2d Cir.1977) (administrative hearing and decision granted by defendant Department of Health, Education and Welfare), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *Basel v. Knebel,* 551 F.2d 395, 397 n. 1 (D.C.Cir.1977) (eligibility for food stamps restored by defendant state agency); *cf. Frost v. Weinberger,* 515 F.2d 57, 63–64 (2d Cir.1975) (summary judgment in plaintiffs' favor, in suit challenging denial of Social Security survivors' benefits, rendered before class was properly certified), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976)); *see also Wright v. Califano,* 603 F.2d 666, 669–70 (7th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980) (satisfaction of named plaintiff's OASDI claim did not moot proposed class action; class related back to date of complaint).

---

**10.** Although the class certification motion was pending at the time defendants settled the named plaintiffs' individual claims, *see Zeidman,* 651 F.2d at 1040–41, we find this fact insignificant in light of *Geraghty.*

**11.** The Supreme Court recognized in *Califano v. Yamasaki,* 442 U.S. at 697, 701, 99 S.Ct. at 2555,

Accordingly, we conclude that resolution of the named plaintiffs' claims has not mooted this appeal. On remand, the district court should reconsider the issue of class certification.[11]

The district court judgment dismissing the case for lack of subject matter jurisdiction is reversed. The case is remanded for further proceedings.

2557 (1979), "that class relief for claims such as those presented by respondents in this case is peculiarly appropriate." There, as here, the plaintiffs were challenging the procedures whereby the Secretary sought to recoup overpayments made to social security recipients.