**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 10 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ERIC WARD,

     Plaintiff - Appellant,

v.

THE STATE OF UTAH, a
governmental entity; MICHAEL
LEAVITT, Governor of the State of
Utah; MARK SHURTLEFF, Attorney
General for the State of Utah,

     Defendants - Appellees.

No. 02-4036

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:01-CV-447-K)**

---

James L. Harris, Jr. (Brian M. Barnard with him on the briefs), Utah Legal Clinic,
Salt Lake City, Utah for the Plaintiff-Appellant.

Jerrold S. Jensen, Assistant Attorney General (Mark L. Shutleff, Attorney General
for the State of Utah with him on the brief), Salt Lake City, Utah for the
Defendants-Appellees.

---

Before **HENRY**, **McWILLIAMS**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Eric Ward, a self-described animal-rights activist, was charged with disorderly conduct, a misdemeanor, after participating in an animal-rights demonstration in Magna, Utah in November 1999. The charge was contemporaneously elevated to a felony under Utah's hate-crimes statute. Both the felony enhancement and the underlying disorderly-conduct charge were dismissed a few weeks later. Ward then brought the instant suit under 42 U.S.C. § 1983, alleging that the hate-crimes statute violates the First Amendment and seeking declaratory and injunctive relief. Concluding that Ward lacked standing to seek such relief, the district court dismissed the case with prejudice. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

**I**

The facts are undisputed. Ward engaged in the stated 1999 protest in order to raise public awareness about the claimed mistreatment of animals in the fur trade. During the protest, Ward took part in a candlelight vigil and participated in the symbolic burning of a mink stole. One year later, he was charged with disorderly conduct under Utah Code Ann. section 76-9-102.[1] That misdemeanor

---

[1] The record does not reveal why defendants waited over one year to charge Ward with disorderly conduct.

charge was subsequently elevated to a felony pursuant to Utah Code Ann. section

76-3-203.3 ("hate-crimes statute"), subparts of which provide:

> (2) A person who commits any primary offense with the intent to intimidate or terrorize another person or with reason to believe that his action would intimidate or terrorize that person is guilty of a third degree felony.
>
> (3) "Intimidate or terrorize" means an act which causes the person to fear for his physical safety or damages the property of that person or another. The act must be accompanied with the intent to cause a person to fear to freely exercise or enjoy any right secured by the Constitution or laws of the state or by the Constitution or laws of the United States.

§ 76-3-203.3.

As subsection two of the hate-crimes statute indicates, in order for the

felony enhancement to apply, a person must commit an underlying misdemeanor

"primary offense." Primary offenses under the statute include assault, property

destruction, criminal trespass, and any misdemeanor offense against public order

and decency.[2] In the instant case, Ward was charged with disorderly conduct, a

---

[2] Subsection five of the statute provides that the primary offenses referred to in subsection two are the misdemeanor offenses for:
> (a) assault and related offenses under Sections 76-5-102, 76-5-102.4, 76-5-106, 76-5-107, and 76-5-108;
> (b) any misdemeanor property destruction offense under Sections 76-6-102, 76-6-104, and 76-8-714, and Subsection 76-6-106(2)(b);
> (c) any criminal trespass offense under Sections 76-6-204 and 76-6-206;
> (d) any misdemeanor theft offense under Section 76-6-412;
> (e) any offense of obstructing government operations under Sections

(continued...)

"primary offense" under the statute.  See § 76-3-203.3(g).  This charge was elevated to a felony, allegedly because the "demonstration was intimidating" and Ward "intended to discourage the subjects of the demonstration from continuing in their constitutionally protected right to pursue a livelihood, i.e., to engage in the fur trade." (Appellant's Br. at 5.)  Both the felony enhancement and the underlying disorderly-conduct charge, however, were dismissed on December 27, 2000.[3]  Consequently, Ward was never prosecuted; although a felony arrest remains on his record, the record also shows the charges were dropped.

Ward filed the present suit in district court under 28 U.S.C. § 1983, seeking (1) declaratory relief as to the constitutionality of the hate-crimes statute; and (2) injunctive relief to prevent any future prosecution under the statute.  In his complaint, Ward alleges that he "plans to and desires to continue to legally engage in lawful First Amendment protected activities" but is "fearful

_____

[2](...continued)
76-8-301, 76-8-302, 76-8-304, 76-8-305, 76-8-306, 76-8-307, 76-8-308, 76-8-313 and Subsection 76-8-310(1);
(f) any offense of interfering or intending to interfere with activities of colleges and universities under Title 76, Chapter 8, Part 7;
(g) any misdemeanor offense against public order and decency as defined in Title 76, Chapter 9, Part 1;
(h) any telephone abuse offense under Title 76, Chapter 9, Part 2;
(i) any cruelty to animals offense under Section 76-9-301; and
(j) any weapons offense under Section 76-10-506.
§ 76-3-203.3(5)

[3]  The record does not indicate why all charges were dropped.

- 4 -

. . . that he will again be charged with a hate crime." (Compl. at 6–7.) Essentially advancing the view that one person's discordant protest is another's music, he asserts that the hate-crimes statute chills speech protected by the First Amendment because it "inhibits legal peaceful conduct protected by the United States Constitution such as picketing, protesting, demonstrating and leafleting on a public street." (Id. at 7.) Concluding that Ward did not have standing to attack the constitutionality of the hate-crimes statute, the district court dismissed the case on the pleadings with prejudice.[4] The court reasoned that Ward could not show an "injury-in-fact," a prerequisite to standing, because he was never prosecuted under the statute and did not allege facts that would subject him to prosecution under the statute in the future.

On appeal, Ward argues that he has standing to challenge Utah's hate-crimes statute and that the court erred in dismissing his claims with prejudice.

**II**

"We review issues of standing de novo." Guides, Ltd. v. Yarmouth Group Property Mgmt., Inc., 295 F.3d 1065, 1072 (10th Cir. 2002). Furthermore, we review a dismissal on the pleadings pursuant to Fed. R. Civ. P. 12(c) under the

---

[4] In dismissing the case on the pleadings, the district court considered various motions filed by the parties, including Ward's Motion for Summary Judgment, Defendants' Motion to Dismiss based on lack of standing, and Defendants' Motion to Convert Motion to Dismiss to Motion for Judgment on the Pleadings.

same standard applicable to a 12(b)(6) dismissal. Ramirez v. Dep't of Corr., 222 F.3d 1238, 1240 (10th Cir. 2000). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975).

**A**

Those who seek to invoke the jurisdiction of the federal courts must satisfy the case-or-controversy requirement imposed by Article III of the Constitution. See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1993); Faustin v. City and County of Denver, Colo., 268 F.3d 942, 947 (10th Cir. 2001). "Plaintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." Lyons, 461 U.S. at 101 (quotation omitted). To meet this standing requirement, a plaintiff must demonstrate "that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." Phelps v. Hamilton, 122 F.3d 1309, 1326 (10th Cir. 1997) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "These three elements of standing are an indispensable part of the plaintiff's case and thus the plaintiff must support each element with the manner

and degree of evidence required at the successive stages of the litigation." Id. (quotation omitted).

Because of the significance of First Amendment rights, the Supreme Court "has enunciated other concerns that justify a lessening of prudential limitations on standing." Id. (quoting Sec'y of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956 (1984)). "[T]he mere threat of prosecution under the allegedly unlawful statute may have a 'chilling' effect on an individual's protected activity," and "the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged." Id. (quotation omitted). A plaintiff bringing a facial challenge to a statute on First Amendment grounds, however, must nonetheless establish an injury-in-fact sufficient to satisfy Article III's case-or-controversy requirement. Id.; see also Bischoff v. Osceola County, Fla., 222 F.3d 874, 884 (11th Cir. 2000) ("[E]ven under the more lenient requirements for standing applicable to First Amendment overbreadth challenges, it still remains the law that plaintiffs must establish that they have suffered some *injury in fact* as a result of defendant's actions.").

In the First Amendment context, two types of injuries may confer Article III standing to seek prospective relief. See Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003). First, a plaintiff generally has standing if he or she alleges "an intention to engage in a course of conduct arguably affected with a

constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." Phelps, 122 F.3d at 1326 (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). Plaintiffs may have standing even if they have never been prosecuted or actively threatened with prosecution. Doe v. Bolton, 410 U.S. 179, 188 (1973). Second, although allegations of a "subjective" chill are not adequate, Laird v. Tatum, 408 U.S. 1, 13–14 (1972), a First Amendment plaintiff who faces a credible threat of future prosecution suffers from an "ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights." Wilson v. Stocker, 819 F.2d 943, 946 (10th Cir. 1987) (emphasis added); see also Mangual, 317 F.3d at 57 (recognizing an injury in the First Amendment context where a plaintiff "is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences" (citing Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 393 (1988); Meese v. Keene, 481 U.S. 465, 473 (1987))).

**B**

With these principles in mind, the question in the present case is whether Ward suffers from the requisite injury-in-fact to have standing to bring this suit. Ward's claim to injury is the threat of future prosecution under the hate-crimes statute, specifically that he plans to engage in "lawful First Amendment protected activities" comparable to those which formed the basis for his felony charge in

the past, but fears that "any infraction he may inadvertently commit will suddenly be elevated to a felony."[5] (Appellant's Br. at 19.) Defendants contend that given Ward's desire to engage in _lawful_ activity, there is no credible threat that he will be charged with a predicate primary offense and thus no threat that he will be subject to the challenged hate-crimes statute. We disagree and conclude that Ward does suffer from an injury-in-fact.

At oral argument, the State conceded that Ward need not violate an underlying primary offense statute in order to trigger application of the felony enhancement. Rather, Ward need only be _charged_ with violating a primary offense statute in order for the government to charge him with a felony under the hate-crimes statute. This distinction is significant because it directly undercuts the government's argument that Ward's plan to engage in lawful activity automatically immunizes him from being charged under the hate-crimes statute. Moreover, Ward alleges that he desires to engage in the same activity that precipitated the hate-crime charge in the past.

---

[5] Ward also claims he suffers from an injury on the basis that he has a felony arrest on his record. Any injury arising from the felony arrest, however, does not confer standing to seek _prospective_ injunctive and declaratory relief—the only relief that Ward seeks. Ward does not seek damages based on his past felony charge nor does he ask for a declaratory judgment that his past felony charge under the hate-crimes statute was unconstitutional. Whether Ward has standing to seek such relief is thus not before us in the instant case.

Utah cites our decision in Faustin as primary support for its argument that Ward lacks standing. In Faustin, the plaintiff displayed an anti-abortion banner at an overpass and was cited for violating Denver's posting ordinance. 268 F.3d at 946. That charge, however, was formally dismissed two days later when the city prosecutor determined that the posting ordinance did not apply because the banner was not affixed to anything. Id. Faustin filed a § 1983 complaint, alleging that the application of the posting ordinance to her was unconstitutional and seeking declaratory and injunctive relief, as well as nominal damages, costs, and fees. Id. Insofar as Faustin sought damages based on her past prosecution (including nominal damages) and declaratory relief with respect to her prosecution, we held that she had standing. Id. at 948. However, we concluded that she lacked standing to seek prospective injunctive relief. Given the city prosecutor's determination that Faustin's banner did not violate the posting ordinance, it was unlikely that she would again be charged under the ordinance. She did not show a "real and immediate threat" of prosecution under the statute in the future because the conduct in which Faustin intended to engage was not proscribed by the challenged statute, as interpreted by the city prosecutor.

Similarly, in PETA v. Rasmussen, 298 F.3d 1198 (10th Cir. 2002), we concluded that PETA did not have standing to seek prospective relief. PETA did not face "a good chance of being likewise injured in the future" because

defendants admitted that they misinterpreted the challenged statute to apply to the plaintiff's conduct in the past, and the plaintiff had not indicated an intention to violate the statute as currently interpreted by the defendants. Id. at 1203 (quoting Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991)). As such, there could be "no claim that the statute will chill PETA's conduct." Id.

In contrast, Ward has been given no assurances that he will not be charged under the hate-crimes statute if he engages in future animal-rights protests similar to the one that was the basis for his felony charge in 2000. Although an explicit declaration by the prosecutor that a challenged statute is inapplicable to a plaintiff's behavior is not necessary to defeat standing, it was the sole reason we gave for concluding that the plaintiffs in Faustin and Rasmussen did not face a "real and immediate threat" of being charged again under the challenged statutes. Faustin, 268 F.3d at 948; Rasmussen, 298 F.3d at 1203. Utah has not indicated either that the underlying primary offense statutes do not apply to Ward's protesting activities or that the felony enhancement under the hate-crimes statute does not apply to Ward's activities. Thus, the concessions that were critical to our conclusion in Faustin and Rasmussen that the plaintiffs did not have standing are lacking here.

Our decision in Wilson has more bearing on the instant case. In Wilson, the plaintiff was arrested for distributing anonymous campaign literature under a

statute that required information identifying the sponsor to be placed conspicuously on the literature.  Thereafter, he challenged the statute on the basis that it infringed his First Amendment rights, and sought declaratory and injunctive relief.  819 F.2d at 945.  This court held that the plaintiff in <u>Wilson</u> had standing to bring the suit because he "was arrested for violating the statute he now challenges" and "has presented sworn testimony that he wishes to continue the conduct which precipitated his arrest, but has not done so for fear of rearrest."  <u>Id.</u> at 946.  We concluded that the plaintiff suffered from "an ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights."  <u>Id.</u>

We recognize that the statute challenged in <u>Wilson</u> was more clearly applicable to that plaintiff's conduct than the Utah hate-crimes statute is to Ward's conduct.  Like the plaintiff in <u>Wilson</u>, however, Ward engaged in activity involving political expression and was subsequently charged under the statute he now challenges.  Furthermore, Ward presents sworn, albeit somewhat conflicting, testimony that he would persist in the conduct that precipitated his past felony charge but for his fear of being charged with the same felony.  Because this case is before us for review on the grant of a motion to dismiss on the pleadings, we must accept Ward's allegations as true and construe them in his favor.  Thus, we conclude that Ward faces a credible threat of future prosecution and suffers from

an injury in the form of a "chilling effect" on his desire to engage in First Amendment activities. See id.; accord Am. Booksellers Assoc., 484 U.S. at 393 ("The State has not suggested that the . . . law will not be enforced, and we see no reason to assume otherwise . . . [and] the alleged danger of th[e] statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution."); Steffel v. Thompson, 415 U.S. 452, 459 (1974) (finding standing where "petitioner's challenge is to those specific provisions of state law which have provided the basis for threats of criminal prosecution against him"); Mangual, 317 F.3d at 57 (recognizing an injury "when a plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences" and holding that "courts will assume a credible threat of prosecution in the absence of compelling contrary evidence" (quotation omitted)).

We are mindful that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." Lyons, 461 U.S. at 102 (quotation and alteration omitted) (holding that the plaintiff lacked standing to seek injunctive relief to prevent police officers from using a chokehold because he did not establish a real and immediate threat that he would again be the victim of an

illegal chokehold).  Here, however, Ward suffers from "continuing, present adverse effects" in the form of the chilling of his First Amendment rights.

In order to have standing, Ward must also demonstrate a causal connection between the injury and the conduct complained of and demonstrate that it is likely that the injury will be redressed by a favorable decision.  Phelps, 122 F.3d at 1326.  Although the district court did not reach these factors, we conclude that they are present.  There is a causal connection between Ward's chilling injury and the challenged statute.  Moreover, a declaratory judgment that the law is unconstitutional and an injunction preventing its enforcement would likely redress Ward's injury.  Thus, we reverse the district court's dismissal for lack of standing.[6]

### III

We **REVERSE** the district court's dismissal on the basis that Ward lacks standing and **REMAND** for further proceedings consistent with this opinion.

---

[6] Ward argues that the district court erred in dismissing his complaint for lack of standing with prejudice.  Given our conclusion above, we need not reach this question.