Joan **OWEN, individually and as personal representative of the Estate of Raymond Owen, and the class of similarly situated individuals and entities,** Plaintiff,

v.

**REGENCE BLUECROSS BLUESHIELD OF UTAH, and The Regence Group, Defendants.**

No. 2:03–CV–01137PGC.

United States District Court, D. Utah, Central Division.

Feb. 9, 2005.

See, also, 2005 WL 2057718.

Mr. Brian S King, Esq., Salt Lake City.

Mr. Colin P King, Esq., Dewsnup King & Olsen, Salt Lake City.

Mr. Randy L Dryer, Esq., Parsons Behle & Latimer, Salt Lake City.

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TAKING UNDER ADVISEMENT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

CASSELL, District Judge.

The defendants seek to dismiss this ERISA action on standing grounds. The

court hereby GRANTS IN PART the defendant's motion for summary judgment. While the plaintiff has standing to seek monetary damages, her claim for injunctive and declaratory relief is moot. The court will take the plaintiff's motion for class certification under advisement pending resolution of further motions for summary judgment.

## BACKGROUND

The plaintiff, Joan Owen, was insured under the defendant's "ValueCare" plan issued to her husband, Ray Owen, through his employer. The ValueCare plan provided for payment of medical expenses for services provided by both Participating and Non–Participating Providers. Coverage for Non–Participating Providers was provided at lower levels than coverage for Participating Providers. In other words, persons insured under the plan generally understood that they would incur greater out-of-pocket expenses for medical services received from Non–Participating Providers.

When persons insured under the ValueCare plan went to a Participating Provider, the costs incurred and billed by the Provider might be greater than the "eligible medical expenses" authorized by the plan. Participating Providers had contracted with Regence not to bill the difference to the patient. When ValueCare participants received services from Non–Participating Providers, however, the provider could bill the patient for the difference between the "eligible medical expenses" authorized by Regence, and the actual billed amount.

With respect to Participating Providers, the ValueCare plan defined "eligible medical expenses" as "the amount as provided in the applicable contractual payment schedule." This amount really made no difference to ValueCare customers, however, since they would not be responsible for the difference. With respect to Non–Participating Providers, however, "eligible medical expenses" were defined as "reasonable charges for Covered Services as determined by Value Care." And "[c]harges in excess of Eligible Medical Expenses are not deemed reasonable charges and are not reimbursable hereunder." So eligible medical expenses were defined as reasonable charges, and charges in excess or eligible medical expenses were not reasonable and not reimbursable.

In March, 2001, Ray Owen was diagnosed with liver cancer. On September 10, 2001, Mr. Owen underwent a liver transplant at LDS Hospital. LDS Hospital is a Non–Participating Provider under the ValueCare Plan, but was also the only hospital in the Intermountain West which performed liver transplants. According to Ms. Owen, however, LDS hospital informed the Owens that they had reached an agreement with Regence so that LDS Hospital would be treated as a Participating Provider for purposes of the operation. Had this agreement not been reached, the Owens would likely have gone to a hospital in Omaha, Nebraska, which was a Participating Provider.

According to Ms. Owen, the agreement reached between Regence and LDS Hospital was that Regence would cover all but $30,000 of the procedure, which the Owens would be responsible for. In her deposition, Ms. Owen alleges that Regence failed to honor this agreement. The Owens were instead billed for $60,421.83. This amount reflected the difference between the amount billed by LDS Hospital ($295,884.20) and the "eligible medical expenses" as defined in the ValueCare plan for Non–Participating Providers as determined by Regence ($235,422.37). In other words, the Owens were billed as though they had gone to a Non–Participating Provider.

According to Regence, the reason LDS Hospital was treated as a Non–Participating provider was because there was no "Case Agreement" in place. Regence and LDS Hospital had worked together in the past on many "Case Agreements." These agreements were worked out on a case-by-case basis and provided for more favorable payment terms for high-cost procedures received by Regence customers at LDS Hospital. This apparently did not occur in the case of Mr. Owen.

Mr. Owen received the liver transplant, but subsequently passed away. Ms. Owen prolonged her insurance coverage under the ValueCare plan for two months after Mr. Owen's death by making COBRA payments. But on June 1, 2002, Ms. Owen allowed her coverage to expire. Ms. Owen does not currently have insurance, but would like to obtain insurance again.

Subsequent to Mr. Owen's liver transplant, Regence and IHC Health Services (which owns LDS Hospital) entered into a "Participating Hospital Agreement." As a result of Ms. Owen's claims for unpaid medical expenses, Regence became aware that there had been no Case Agreement with LDS Hospital for Mr. Owen's liver transplant. On November 15, 2004, almost a year after Ms. Owen's complaint was filed in this case, Regence and IHC agreed to amend the Participating Hospital Agreement to address Mr. Owen's liver transplant. As a result, LDS Hospital has agreed to accept the "eligible medical services" amount paid by Regence for the liver transplant as payment in full. LDS Hospital has also agreed that Ms. Owen will not receive any further bills from LDS Hospital. According to Ms. Owen, however, the agreement reached between Regence and LDS Hospital now means that Ms. Owen has overpaid $29,569.50, for which she should be reimbursed.

Regence also alleges that Dr. Shane and Dr. Cummins, who were involved in the liver transplant, are covered by the Participating Hospital Agreement reached between Regence and LDS Hospital, and that Ms. Owen is not legally responsible for any further payments to these doctors. Ms. Owen disputes this, and asserts that she has continued to receive explanation of benefit forms ("EOBs") from Regence which identify the doctors as non-contract providers. An EOB dated January 3, 2005 shows Dr. Shane as a non-contract provider and states that Ms. Owen is responsible to him for $77.80 of non-eligible expenses. An EOB of the same date shows Dr. Cummins as a non-contract provider and that Ms. Owen owes him $143.75 in non-eligible expenses. But on January 5, 2005, Ms. Owen received an EOB from Regence showing that Dr. Cummins was now a contract provider and that Ms. Owen owes nothing for the services he rendered. A similar EOB came for Dr. Shane on January 6, 2005. Finally, on January 7, 2005, Ms. Owen received another EOB for Dr. Shane showing that he is a contracted provider, but that Ms. Owen owed $19.25 as non-eligible expenses. And on January 11, 2005 Ms. Owen received an EOB for Dr. Cummins showing that he is a contract provider but that Ms. Owen owes $143.75 for non-eligible services.

According to Ms. Owen, KCI USA, Inc. (another Non–Participating Provider) is also still claiming that Ms. Owen owes it money in connection medical equipment purchased by the Owens following the liver transplant. KCI submitted a claim for $2,461.80 to Regence. Regence determined it would pay $842.64 of the claim as "eligible medical expenses." The Owens would be responsible for the rest. According to Regence, however, KCI has no record of billing the Owens for the remaining amount. It is not clear whether KCI intends to pursue payment of the amount outstanding.

Ms. Owen's lawsuit, brought under the provisions of ERISA, 29 U.S.C. § 1132(a), alleges that the ValueCare policy violates federal law because it does not identify how much ValueCare customers will be responsible for when they utilize Non–Participating Providers. Specifically, the lawsuit alleges that the failure to appropriately define "eligible medical expenses" with respect to Non–Participating Providers violates ERISA.

Ms. Owen seeks to have this action certified as a class action. According to Ms. Owen, Regence continues to use the same vague "eligible medical expenses" definition in its ValueCare plan. The proposed class definition is:

> All Regence BlueCross and BlueShield insureds who are covered under a fully insured health plan and, since December 31, 2000, have received medical services from non-contracted providers.

According to Regence, this definition would cover approximately 68,750 Regence customers and potentially 230,920 claims for services from non-contracted providers.

The above facts are largely undisputed. Additional facts will be set forth below as necessary.

### DISCUSSION

#### I. Motion for Summary Judgment

■ Regence argues that Ms. Owens no longer has standing to bring her claim for money damages because the claim has been mooted by the agreement between Regence and LDS Hospital. According to the Tenth Circuit, "under the 'case or controversy' requirement of Article III of the Constitution, 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.' "[1] Mootness occurs when " 'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' "[2] In determining whether a case has become moot, the court looks at whether subsequent events have deprived the plaintiff of standing. "Article III mootness is 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' "[3] In other words, while "[s]tanding is determined as of the time the action is brought,"[4] mootness requires the court to ask whether standing exists as the case now stands.

■ On a motion for summary judgment, the facts are typically taken in the light most favorable to the non-moving party; in this instance, the plaintiff. Where the issue is one of jurisdiction, however, the plaintiff has the burden of establishing the elements of standing.[5] "At the summary judgment stage, the plaintiff must set forth by affidavit or other evidence specific facts that, if taken as true, establish [standing]."[6]

1. *City of Albuquerque v. U.S. Dep't of Interior,* 379 F.3d 901, 918–19 (10th Cir.2004) (quoting *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)).

2. *City of Albuquerque,* 379 F.3d at 919 (quoting *City of Erie v. Pap's A.M.,* 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000)).

3. *Southern Utah Wilderness Alliance v. Smith,* 110 F.3d 724, 727 (10th Cir.1997) (quoting *Arizonans For Official English v. Arizona,* 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)) (quoting Henry Monaghan, *Con-* *stitutional Adjudication: The Who and When* 82 Yale L.J. 1363, 1384 (1973)).

4. *Nova Health Systems v. Gandy,* 388 F.3d 744, 749 (10th Cir.2004).

5. *Id.*

6. *Id. See also Tandy v. City of Wichita,* 380 F.3d 1277, 1284 (10th Cir.2004) ("[A]t the summary judgment stage, the elements of standing must be set forth, through specific facts, by affidavit or other evidence").

■ The elements of standing are designed to determine whether Article III requirement of a case or controversy exists.

To establish Article III standing, a plaintiff must show that: (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested.[7]

### A. Is Ms. Owen's Claim for Monetary Relief Moot?

Regence first alleges that Ms. Owen's claim for monetary relief should be dismissed as moot. According to Regence, Ms. Owen's injury has been cured because LDS Hospital has agreed that she no longer owes any money. But according to Ms. Owen, several monetary claims are still pending.

■ First, Ms. Owen alleges that even given the agreement between Regence and LDS Hospital, she is still owed reimbursement of $29,569.50 for payments she has already made to LDS Hospital. Regence contends that Ms. Owen's claim for reimbursement, if it exists at all, lies against LDS Hospital and not against Regence, and that ERISA claims for monetary damages cannot be brought against non-fiduciaries even if they assist the fiduciary in violating ERISA.[8] In other words, Regence tries to classify Ms. Owen's claim that she is owed reimbursement of $29,569.50 as a state law claim based on Ms. Owen's alleged position as a third-party intended beneficiary to the contract entered into between LDS Hospital and Regence.

For purposes of the pending motion, the court disagrees. Ms. Owen's may have a claim against LDS Hospital based on these same facts; but this does not mean that she does not also have a claim against Regence under ERISA. Ms. Owen's alleges that the ValueCare plan's definition of eligible medical expenses for Non–Participating Providers violates ERISA. In her amended complaint she states:

> The failure to disclose the EME in the Policy and the application of limitations or exclusions based on the undisclosed EME, have damaged [Ms. Owen] ... *in the amount of the difference between the usual billed charges* [$295,844.20] *for* [Mr. Owen's] *medical expenses and the reimbursement amounts actually provided under the Policy's undisclosed EME* [$235,422.37].[9]

In other words, Ms. Owen alleges that she should not have been responsible to LDS Hospital for *any* payments, and that the payments she did make to LDS Hospital were the result of Regence's failure to disclose material information in the Value-Care policy. Therefore, according to this theory, Regence is the party responsible for reimbursing her for any payment she did make to LDS Hospital. If Ms. Owen's claim has merit (a question not to be addressed when considering standing) then she has indeed stated a claim for monetary damages under ERISA against Regence. If Ms. Owen's claim has merit, then Regence may be able to seek recovery from LDS Hospital through indemnification or some other theory. But that is not of concern to this court.

Second, Ms. Owen alleges that KCI contacted her about payment of $1,619.16 dif-

---

7. *Tandy,* 380 F.3d at 1283.

8. *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

9. Amended Complaint ¶ 36 (emphasis added).

ference between the billed charge and the amount Regence paid under its eligible medical expenses. Ms. Owen's affidavit states: "As far as I know, KCI still expects to be paid that difference for its services."[10] Regence disputes this, stating that KCI has no record that Ms. Owen has ever been billed for the difference.[11]

■ The court is not convinced that the alleged amount owing to KCI creates standing. Ms. Owen has no evidence that KCI has ever, in fact, attempted to collect on the debt. According to the affidavit put forth by Regence, KCI has never billed Ms. Owen for the debt. Regence has submitted with its Reply Memorandum the affidavit of KCI, USA. Attached to the affidavit is an "Itemized Statement" of Ms. Owen's account showing that she owe's nothing. Therefore, while Ms. Owens may have some concern with the possibility that KCI will attempt to collect, there is no evidence that this is the case. " 'Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be "certainly impending" to constitute injury in fact.' "[12] The threat that KCI may attempt to collect, more than four years after the debt was incurred and in the face of evidence to the contrary, is not so imminent as to confer standing.

Third, Ms. Owen alleges that there is still the issue of the EOBs from Regence regarding services provided by Dr. Shane and Dr. Cummins. Regence alleges that these doctors were covered by the Participating Hospital Agreement, so that no money is owed to them by Ms. Owen. Ms. Owen has received several conflicting EOB's from Regence regarding these services. The most recent of these statements show that Dr. Cummins and Dr. Shane are now contract providers, but that she still owed each for non-eligible services.

■ The total amount owed (approximately $163.00) may seem trivial in light of this case. But the amount owed is not a factor in the standing analysis. Most persuasive to this court is the fact that Ms. Owen has not shown that there has ever been an attempt to collect the debt. The EOBs from Regence clearly indicate that they are an explanation of benefits and not a bill. Moreover, the evidence seems to support Regence's contention that Dr. Shane and Dr. Cummins were covered by the agreement entered into between Regence and LDS Hospital.[13] Regence has explained the conflicting EOBs.[14] Accordingly, like the amount owing to KCI, this court cannot say that the debt Ms. Owen may or may not owe to Dr. Shane and Dr. Cummins is concrete enough to demonstrate an injury in fact. This is made clear by looking at the relief requested. Any relief ordered by this court for these debts would be hypothetical. The court would have to order that *if* KCI, Dr. Shane, or Dr. Cummins attempted to collect on the debt, Regence would be responsible for it. "[T]o be cognizable, a suit must be 'a real and specific controversy admitting of specific relief through a decree of a conclusive character.' "[15] The debts owing to Dr.

---

10. Second Owen Aff. ¶ 2.

11. Second Clawson Aff. ¶ 14.

12. *Nova Health Systems*, 388 F.3d at 749–50 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990))).

13. Clawson Third Aff. ¶¶ 1–3.

14. Cordova Aff. ¶¶ 1–7.

15. *Southern Utah Wilderness Alliance*, 110 F.3d at 727 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)).

Shane and Dr. Cummins are too speculative to be a basis for standing.

■ Fourth, Ms. Owen alleges that even if the above amounts were not still in controversy, she would have standing based on her right to recovery of attorney's fees. Ms. Owen has agreed to pay counsel 35% of any amount recovered, as well as reimbursement for costs advanced by counsel. Moreover, the ERISA statute provides for attorney's fees to the prevailing party.[16] But Ms. Owen's stake in recovering attorney's fees is not enough to prevent the merits of the controversy from becoming moot. As Judge McConnell has written, "[T]he prospect of attorney's fees does not affect whether the underlying claim is justiciable. As the Supreme Court has stated, the 'interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.' "[17] The claim for attorney's fees may still be a live cause of action, but "a claim of entitlement to attorney's fees does not preserve a moot cause of action."[18] The case cited by Ms. Owen, *Adamson v. Bowen,*[19] suggests that a motion for class certification may not be moot when the person wanting to represent the class still has a claim for attorney's fees. But as will be discussed more fully below, that is not the same as finding that the merits of the case are moot.

## B. Does Ms. Owen Have Standing to Assert Claims for Injunctive and Declaratory Relief?

■ The next issue is whether Ms. Owen has standing to assert claims for injunctive and declaratory relief. In her Complaint, Ms. Owens requests (1) an injunction requiring Regence to disclose its method of calculating eligible medical expenses with respect to services provided by Non–Participating Providers; (2) an injunction preventing Regence from using the disputed clause in the future; (3) imposition of a constructive trust in the amount of the difference between the usual billed charges from Non–Participating Providers and the amount paid by Regence; and (4) an order requiring Regence to disgorge all funds obtained through their practice of applying undisclosed eligible medical expenses to Non–Participating Providers. The Tenth Circuit has held that standing to seek monetary damages does not include standing to seek injunctive and declaratory relief.[20]

It is undisputed that Regence continues to use the "eligible medical expenses" clause Ms. Owen complains of, and similar clauses in other policies. As of June 1, 2002, however, Ms. Owen's insurance through Regence expired. Regence alleges that because Ms. Owen is no longer covered by the ValueCare plan, she does not have standing to seek declaratory and injunctive relief on behalf of herself or others who are still insured by Regence. Ms. Owen argues that she still has standing to seek injunctive relief because of "the

---

**16.** 29 U.S.C.A. 1132(g)(1).

**17.** *Utah Animal Rights Coalition v. Salt Lake City Corp.,* 371 F.3d 1248, 1269 (10th Cir. 2004) (McConnell J. concurring) (quoting *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 480, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)).

**18.** *Dahlem v. Bd. of Ed. of Denver Pub. Sch.,* 901 F.2d 1508, 1511 (10th Cir.1990); *see also*

*Nash v. Chandler,* 859 F.2d 1210 (5th Cir. 1988) (attorneys fees awardable even where case is dismissed as moot).

**19.** 855 F.2d 668, 675 (10th Cir.1988).

**20.** *See Committee for the First Amendment v. Campbell,* 962 F.2d 1517 (10th Cir.1992) (holding that claim for injunctive relief was moot but claim for damages was not moot).

disadvantages she faces as a consumer in the Utah private health insurance market due to Regence's failure to disclose material information" regarding eligible medical expenses for services provided by Non–Participating Providers.[21]

Standing is alleged, then, based on Ms. Owen's status as a prospective consumer of health insurance in Utah. According to Ms. Owen, Regence has failed to comply with Utah State law [22] by refusing to disclose information which would allow her, as a prospective consumer of health insurance, to make an informed decision in purchasing health insurance. The issue before the court is whether this claim is concrete enough to confer standing upon Ms. Owen—i.e., whether Ms. Owen has claimed a violation of "a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." [23] This determination in no way depends upon the merits of Ms. Owen's claim that Regence's ValueCare policy violated Utah and Federal law.

■■■ The Tenth Circuit has stated that " 'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, adverse effects.' " [24] But this is not a case where Ms. Owen is seeking injunctive relief to prevent past wrongs from reoccurring. If it were she would have to "demonstrate a good chance of being likewise injured in the future." [25] Since Ms. Owen is no longer insured under the ValueCare plan it is unlikely she could make this showing. Rather, Ms. Owen is alleging a new harm based on her position as a prospective purchaser of insurance. It is this claim which the court must analyze to see whether Ms. Owen has stated an injury in fact.

Ms. Owen's future intentions are not concrete enough to confer standing to seek injunctive and declaratory relief. In *Tandy v. City of Wichita*,[26] the Tenth Circuit considered several plaintiffs claiming standing to seek injunctive relief based on their future intentions. The plaintiffs were disabled individuals seeking an injunction against Wichita Transit's fixed-route bus system. The Tenth Circuit first set out the general rule for standing to seek prospective relief:

> To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future.... The threatened injury must be 'certainly impending' and not merely speculative. A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction.[27]

The court then went through the standing analysis with respect to each individual plaintiff. Where the plaintiffs' future intentions were definite as set forth in affidavits, the court found standing. "Speculative 'someday' intentions do not support

---

**21.** Memo. Opposition at 14.

**22.** *See* UTAH CODE ANN. § 31A–22–613.5.

**23.** *Nova Health Systems,* 388 F.3d at 749.

**24.** *Ward v. Utah,* 321 F.3d 1263, 1269 (10th Cir.2003) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)); *see also Faustin v. City, County of Denver, Colo.,* 268 F.3d 942, 948 (10th Cir.2001) (plaintiff had standing to sue for damages for criminal prosecution but where charges were dismissed had no standing to sue for an injunction because there was no "real and immediate threat" that she would be prosecuted again).

**25.** *Facio v. Jones,* 929 F.2d 541, 544 (10th Cir.1991).

**26.** 380 F.3d 1277 (10th Cir.2004).

**27.** *Tandy v. City of Wichita,* 380 F.3d 1277, 1283–84 (10th Cir.2004).

standing to seek prospective relief. Allen's testimony of an intent to use buses 'several times per year' suggests a concrete, *present* plan to use ... buses ...." [28] The court contrasted this with the plaintiffs in *Lujan v. Defenders of Wildlife*,[29] where the plaintiffs "had merely expressed a desire to *someday* visit places halfway around the world. Unlike Allen, those plaintiffs had neither *present* concrete plans nor any specification of *when* 'someday' would be." [30] Standing cannot be established based on an intention to act "at 'some indefinite future time.' " [31] Other plaintiffs who had set forth affidavits expressing similar concrete intentions also had standing. One plaintiff, however, was denied standing because the underlying motion was for summary judgment and he had failed to set forth his intentions in an affidavit or by other evidence. "Mere allegations do not suffice. Unlike the other appellants, Garnett submitted no affidavit stating an intent to utilize Wichita Transit's fixed-route bus system. Because of this case's summary judgment posture, Garnett's mere allegation does not suffice to establish that he is under a real and immediate threat of ... injury." [32]

▆▆▆ In this case, the court finds that Ms. Owen lacks standing to seek injunctive relief for two reasons. First, Ms. Owen has not definitively stated an intention to purchase health insurance in Utah. She has stated merely that she "would like to obtain health insurance for myself and my sons through a private insurance carrier as soon as possible." [33] There is simply no evidence before this court, other than allegations in the pleading, that Ms. Owen in fact intends to seek private insurance or,

more specifically, that Regence is an option she is considering so that she is directly affected by the alleged material omission in their ValueCare plan. Ms. Owen's affidavit expresses no more than a "someday" intention—something she would "like" to do. There is no indication of any definite, concrete intention, or of a certainly impending injury based on that intention. Second, Ms. Owen has not identified a legally-protected interest in being an informed consumer. The statute she cites, Utah Code Ann. § 31A–22–613.5, does not create a private cause of action. Moreover, Ms. Owen's claim was brought under ERISA, and she has made no showing that ERISA establishes the legally-protected interest she is asserting. Therefore, Ms. Owen does not have standing to seek prospective injunctive relief.

## C. What if Ms. Owen's Claim for Monetary Damages Becomes Moot?

At oral arguments, Regence made the court aware that LDS Hospital is currently conducting a review of its records in order to determine whether Ms. Owen is entitled to reimbursement. Given that Ms. Owen's sole remaining claim involves this reimbursement, should LDS Hospital reimburse Ms. Owen the full amount, her personal claims would clearly be moot. Ms. Owen argues, however, that even if she is made whole by LDS Hospital, she would still have standing to represent the proposed class because her claim is capable of repetition, yet evading review. The issue before the court, then, would become whether the satisfaction of Ms. Owen's

---

**28.** *Id.* at 1284.

**29.** 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

**30.** *Tandy,* 380 F.3d at 1284 (internal citations omitted).

**31.** *Id.* at 1285 (internal citation omitted).

**32.** *Id.* at 1288.

**33.** Owen Aff. ¶ 5.

claims would render the pending motion for class certification moot. Although the court has determined that Ms. Owen's claim for monetary damages is not now moot, because this issue has been fully briefed and argued, and because of the potential that Ms. Owen's remaining claim will become moot before the court rules on the motion for certification, it will expedite this litigation to consider the issue now.

## 1. Is a Motion for Class Certification Mooted When the Named Plaintiff's Claims Become Moot?

"As a general rule, a suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified." [34] This is so because "the right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims. Should the substantive claims become moot in an Article III sense, by settlement of all personal claims for example, the court retains no jurisdiction over the controversy of the individual plaintiffs." [35]

There are several exceptions to this rule. First, "mootness of the named plaintiff's individual claim *after* a class has been duly certified does not render the action moot." [36] Second, the litigation may also continue where the named plaintiff's claim becomes moot *before* class certification, if the claim "is 'capable of repetition, yet evading review,' the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation." [37] In such cases, the class certification "relates back" to the filing of the complaint when the named plaintiff still had a personal stake.[38] But this rule only applies "where the named plaintiff does have a personal stake at the outset of the lawsuit, and where the claim may arise again *with respect to that plaintiff.*" [39] In other words, the capable of repetition, yet evading review, exception does not apply unless the same injury could occur to the named plaintiff again. But "if there is no chance that the named plaintiff's expired claim will reoccur, mootness [can only be avoided] through certification of a class prior to expiration of the named plaintiff's personal claim." [40] Third, similar to repetitive harms which evade review, "[s]ome claims are so inherently transitory that the trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires." [41] Fourth, when class certification has been denied but the proposed representative prevails on the merits of an individual claim, the named plaintiff has standing to appeal the certification issue even though his own claims have been mooted by victory.[42] Fifth, "named plaintiffs whose claims are satisfied through entry of judgment over their objections may appeal the denial of a class certification ruling." [43] The

34. *Reed. v. Heckler,* 756 F.2d 779, 785 (10th Cir.1985).

35. *Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 332, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

36. *U.S. Parole Commission v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).

37. *Id.* at 398, 100 S.Ct. 1202.

38. *Sosna v. Iowa,* 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

39. *Geraghty,* 445 U.S. at 398, 100 S.Ct. 1202. (emphasis added).

40. *Geraghty,* 445 U.S. at 398, 100 S.Ct. 1202.

41. *Id.* at 399, 100 S.Ct. 1202.

42. *Id.*

43. *Id.* (citing *Roper,* 445 U.S. 326, 100 S.Ct. 1166).

Tenth Circuit has extended this final category to also include cases where the named plaintiffs claims "have been rendered moot by purposeful action of the defendants." [44]

So long as the claims of the named plaintiffs are presented in a sufficiently adversarial relationship to sharpen the issues, the ability of the defendant to moot the claims of the named plaintiffs by favorable judgments should not prevent reexamination of the class certification issues. [45]

These exceptions "demonstrate the flexible character of Article III mootness doctrine." [46] But even where the court decides that the class certification issue is not moot, this "does not automatically establish that the named plaintiff is entitled to continue litigating the interests of the class. 'It does shift the focus of examination from the elements of justiciability to the ability of the named representative to "fairly and adequately represent the interests of the class."' ... *The question of who is to represent the class is a separate issue.*" [47] In other words, once the court has established that one of these exceptions applies, the constitutional concerns have been satisfied, the named plaintiff's personal stake relates back to the filing of the complaint, and the only questions left to answer are the procedural questions posed by Rule 23. [48] Finally, if the motion for class certification is not moot, and if certification is granted but the court determines that Ms. Owen is not an appropriate representative under Rule 23, the court may be required to allow time for the intervention of one of the class members who has standing and would be an appropriate representative of the class. [49]

## 2. Is the Motion for Class Certification Mooted by the Actions of Regence?

The court has noted five exceptions to the general rule that a motion for class certification becomes moot when the named plaintiff's claims become moot. The next issue is whether this case falls within any of these exceptions.

This is not a case where the named plaintiff's claims became moot after the class was certified. Nor does this case fall into the capable of repetition, yet evading review, exception. The Supreme Court explained that this exception only applies "where the claim may arise again *with respect to that plaintiff.*" [50] This means that Ms. Owen would have to show that she is likely to suffer the same injury again. As the court explained above, Ms. Owen is no longer covered by Regence. Therefore, any discussion that she may suffer the same injury again is purely speculative and without any foundation.

This also is not a case where the nature of the claim is so inherently transitory that no court would be likely to rule on a motion for certification before the claim became moot. This case is not similar, for example, to a case challenging the conditions of temporary pretrial detention. [51]

---

44. *Heckler,* 756 F.2d at 786.

45. *Id.* at 787.

46. *Geraghty,* 445 U.S. at 400, 100 S.Ct. 1202.

47. *Id.* at 405, 100 S.Ct. 1202 (citations omitted) (emphasis in original).

48. *See e.g., Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1045 (5th Cir.1981) (finding that named plaintiffs could represent the class where judgment had been tendered over their objections rendering their individual claims moot).

49. *Lynch v. Baxley,* 651 F.2d 387 (5th Cir. 1981).

50. *Geraghty,* 445 U.S. at 398, 100 S.Ct. 1202.

51. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

■ This case, however, might fit under the fifth exception identified by the Supreme Court in *Geraghty* as those cases where the named plaintiff's case has been mooted "through entry of judgment over their objections . . . ."[52] Or as the Tenth Circuit rendered it, cases which have become moot "by purposeful action of the defendant."[53]

The reasoning behind this final exception is clear. Defendants in class action suits are often facing potentially large judgments. The Supreme Court has noted, "A district court's ruling on the certification issue is often the most significant decision rendered in these class-action proceedings."[54] Because of this, there is often a desire on the part of the defendant to wage a "preemptive strike" to prevent certification by mooting the claims of the named plaintiffs.[55]

In the typical "negative value" class action where the value of the class representative's individual claim is, relatively speaking, nominal, the class defendant risks little by making a tender or offer of judgment of full relief. When the offer comes in the form of an offer of judgment, it places the suit in its starkest terms for the class representative: either accept the relief offered, often more than the value of the representative's individual claim, or risk shouldering for an entire class of strangers the burden of not merely the defendant's costs but its attorneys' fees as well. The coercive effect of the offer is substantial. As one federal court of appeals has observed: "The very feature that makes class treatment appropriate-small individual stakes and large aggregate ones-ensures that the representative will be unwilling to vouch for the entire costs. Only a lunatic would do so. A madman is not a good representative of the class!"[56]

The Supreme Court has expressed concern with defendants attempting to "pick[ ] off . . . an affirmative ruling on class certification" before it can be obtained.[57] Such attempts "frustrate the objectives of class actions" and "invite waste of judicial resources . . . ."[58]

It appears that Regence has engaged in an attempt to moot Ms. Owen's claims by peremptorily providing her with the relief she sought. The agreement entered into with LDS Hospital appears to have been a result of this lawsuit and the threat of certification. The court certainly cannot state this definitively. Such "motive" evidence is rarely clear. But the appearance in this case is enough under the flexibility of the mootness doctrine that the court believes that even if Ms. Owen's remaining claim is mooted, the motion for class certification should go forward. Moreover, the ultimate issue is whether the "claims of the unnamed plaintiffs are presented in a sufficiently adversarial relationship to sharpen the issues . . ."[59] The court believes that they are. Finally, as explained above, this would mean only that the *motion* for certification is not moot. The court would, of course, still have to reach the merits of certification under Rule 23 and determine

**52.** *Geraghty*, 445 U.S. at 400, 100 S.Ct. 1202.

**53.** *Heckler*, 756 F.2d at 786.

**54.** *Roper*, 445 U.S. at 339, 100 S.Ct. 1166.

**55.** John C. Davis, *Offers of Judgment and Tenders of Relief Before Class Certification: When is it Permissible to Pick Off the Class Representative?*, 76 Fla. B.J. 10 (Nov.2002).

**56.** *Id.* at 11–12 (quoting *Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir.1991)).

**57.** *Roper*, 445 U.S. at 339, 100 S.Ct. 1166.

**58.** *Id.*

**59.** *Heckler*, 756 F.2d at 787.

whether Ms. Owen would be an appropriate representative of the class.

## II. Motion for Class Certification

The court also has pending plaintiff's motion for class certification. The court is aware of its obligation to decide this issue "[a]s soon as is practicable ...."[60] Nonetheless, the court is going to stay the motion for class certification pending quick resolution of motions for summary judgment it has invited the defendant to file. Ms. Owen has carefully crafted her claim. In doing so, she has specifically denied any theory of recovery based on (1) a material misrepresentation by Regence; or (2) *reliance* upon a material omission. As the court understands it, Ms. Owen's claim has three parts: (1) Regence's failure to define "eligible medical expenses" with respect to Non–Contract Providers constitutes a material omission in violation of ERISA; (2) the remedy for this omission is to strike this provision from the insurance policy; and (3) having stricken this provision, Regence becomes liable for the full amount of services billed by Non–Contract Providers. Formulated this way, Ms. Owen's theory would not require her to prove reliance on the omission.

Whether reliance on an omission is a component of an ERISA cause of action is unclear. It is clear that an ERISA plaintiff may state a cause of action for breach of fiduciary duty based upon a material omission.[61] Part of Regence's response to the motion for certification argues that *reliance* is an element of a claim for breach of fiduciary duty for a material omission. It is clear that where the claim is for breach of fiduciary duty is based on a material *misrepresentation,* reliance is an element. As the Third Circuit has held:

> To allege and prove a breach of fiduciary duty for misrepresentations, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental *reliance* by the plaintiff on the misrepresentation.[62]

While the Third Circuit's language deals with misrepresentation, its holding seems to logically apply to all claims for breach of fiduciary duty under ERISA. Moreover, were the issue one of first impression (and perhaps it is) this court would be inclined to hold that reliance is an element of a material omission claim. Of course, reliance on a material omission presents different issues than reliance on an affirmative misrepresentation. But the general theory is the same; the plaintiff should be forced to show that the omission caused the plaintiff's damages. In this case, for example, a reliance element would seem to properly forestall recovery for a proposed class member who deliberately elected to go to a Non–Contract Provider who was a family friend, knowing full well that out-of-pocket expenses would be greater. To find otherwise would seem to create a windfall for those customers who deliberately choose to pay more to obtain certain services. The ValueCare policy does explain that it generally costs *more* to go to a Non–Contract Provider, even if it does not state precisely how much more, or give the customer any way of knowing how eligible medical services are calculated:

---

60. FED. R. CIV. P. 23(c).

61. *See Horn v. Cendant Operations, Inc.,* 2003 WL 21513210 (10th Cir.2003).

62. *Burstein v. Retirement Account Plan for Employees of Allegheny Health Education and Research Foundation,* 334 F.3d 365, 384 (3d Cir.2003) (emphasis added).

It is generally to the Member's financial advantage to use ValueCare Providers. When a ValueCare Provider is used, the Member is responsible to pay only the Deductible, Copayment and Co-insurance for Covered Services.... When Non–Value Care Providers are used, the Member is responsible not only for Deductible, Copayment and Co-insurance for Covered Services, but also for the difference between the Non–ValueCare Provider's billed charged and Eligible Medical Expenses.

Where the breach of fiduciary duty is for an omission, proving reliance would simply mean proving that the insured would have behaved differently had she known all the information. "A fiduciary's ... failure to disclose is material 'if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed ... decision.' "[63] But if the insured would have made the same decision even if she had the omitted information, it would seem to follow that she was "adequately informed."

There is no reason to belabor the point further here, and the court will keep an open mind on this issue. The court, however, invites a motion for summary judgment from Regence to clarify this issue. Whether or not reliance is an element of a claim for material omission under ERISA appears to be a matter of law for the court to resolve. Given that Ms. Owen has specifically rejected any theory of recovery based upon reliance, this issue may be dispositive of the entire case. Therefore, if Regence can show that there is no genuine issue of material fact that reliance is an element of a claim for material omission under ERISA, or, alternatively, that Ms. Owen's allegations as they stand fail to state a claim under ERISA, the court

would be inclined to grant summary judgment against Ms. Owen. On the other hand, if Ms. Owen can demonstrate a genuine issue of material fact on this issue, the court would be inclined to let her claim go forward on the theory she has presented—that regardless of reliance, the provision at issue violated ERISA and should be stricken from the contract so that Regence would be responsible for the full costs when a customer went to a Non–Contract Provider.

On a related note, the court also invites further briefing on Rule 23 certification issues. Were this court to grant certification, it would do so only after imposing two additional limitations on the class. First, Regence has put forth evidence that, for various reasons, the proposed definition of the class is overbroad because many of the proposed class members have suffered no damages. This would be true, for example, in cases where a Non–Contract Provider accepted Regence's approved eligible medical expenses as payment in full without billing the patient for the difference between its usual billed amount and the amount paid by Regence. Therefore, the class would have to be limited to individuals who were actually billed by the Non–Contract Provider. Second, where Regence can show that a class member's policy includes a mandatory arbitration clause, any claim of that class member dated before January 1, 2002 would be excluded from the class.

The court would like more briefing from the parties concerning whether individual class members should be excluded for failure to exhaust administrative remedies. The court also invites more briefing concerning whether the requirements of Rule 23(b) have been met in this case. The

---

**63.** *Horn,* 2003 WL 21513210 at * 6 (quoting *Jordan v. Fed. Express Corp.,* 116 F.3d 1005, 1015 (3d Cir.1997))..

parties have indicated that no discovery will be needed to address these issues. Finally, Regence is directed to raise by a summary judgment motion any other issues regarding whether Ms. Owen is entitled to recovery.

A hearing is set for May 3, 2005 at 3:00 p.m. The court would like to receive all motions for summary judgment and briefing on related issues no later than April 25, 2005. The parties shall mutually agree upon a briefing schedule within these parameters.

### CONCLUSION

The court grants in part and denies in part the defendants' motion for summary judgment (# 46–1). The court takes under advisement the motion for class certification.